## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

MIDWEST ENERGY, INC.,

> Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

> Respondent.

Case No. 24-1032

## PETITION FOR REVIEW

Pursuant to 5 U.S.C. § 706, 16 U.S.C. § 825*l*(b), and Federal Rule of Appellate Procedure 15(a), Petitioner Midwest Energy, Inc. ("Midwest Energy") hereby petitions this Court for review of the Federal Energy Regulatory Commission's ("FERC") order titled *Southwest Power Pool, Inc.*, Order Addressing Arguments Raised on Rehearing, Docket No. ER22-1846-004, 185 FERC ¶ 61,189 (Dec. 19, 2023) ("Rehearing Order") (attached hereto as Ex. A).

This petition supplements Midwest Energy's petition for review in No. 23-1287, which challenges two earlier FERC orders entered in the same proceeding. *See Southwest Power Pool, Inc.*, Order Setting Aside Prior Order and Dismissing Compliance Filing, Docket Nos. ER22-1846-002 and ER22-1846-003, 184 FERC ¶ 61,028 (July 13, 2023) ("Reversal Order"); *Southwest Power Pool, Inc.*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, Docket No. ER22-1846-004, 184 FERC ¶ 62,145 (Sept. 14, 2023) ("Notice"). The

Reversal Order challenged in No. 23-1287 rejected a Southwest Power Pool ("SPP") tariff amendment that proposed a method for allocating costs associated with certain electricity transmission facilities and set aside FERC's prior approval of that amendment.  Reversal Order, 184 FERC ¶ 61,028 at P 1–3; *see Southwest Power Pool, Inc.*, Order Accepting Tariff Revisions Subject to Condition, Docket No. ER22-1846-001, 181 FERC ¶ 61,076 (Oct. 28, 2022) ("Approval Order").  The Rehearing Order that is the subject of this petition denied requests for rehearing of the Reversal Order, "modif[ied] the discussion" in the Reversal Order, and otherwise "reache[d] the same result" as that order.  Rehearing Order, 185 FERC ¶ 61,189 at P 2.

The Court has consolidated Midwest Energy's petition in No. 23-1287 with Case Nos. 23-1054, 23-1097, and 23-1264, other pending challenges to the FERC orders in the underlying proceeding.  *See* Doc. No. 2021933, *Midwest Energy, Inc. v. FERC*, No. 23-1287 (D.C. Cir. Oct. 16, 2023); Doc. No. 2021949, *City Utilities of Springfield, Missouri v. FERC*, Nos. 23-1054, 23-1097, 23-1264, and 23-1287 (D.C. Cir. Oct. 16, 2023).  Midwest Energy respectfully requests that the Court consolidate this appeal with those cases.  Consolidation is appropriate because the petitions arise from the same underlying FERC proceeding.

Midwest Energy operates as a customer-owned electric and natural gas cooperative in central and western Kansas.  Midwest Energy provides bundled

electric service to approximately 50,000 electric retail customers and wholesale sales and/or transmission service to municipal electric systems. Midwest Energy is a generation owner and a transmission-owning member of SPP, and Midwest Energy is aggrieved by the Rehearing Order's denial of SPP's proposed tariff amendment. As a transmission-owning member and transmission service customer of SPP, Midwest Energy's costs are directly affected by the transmission service rates and charges filed by SPP and accepted by FERC. These tariff provisions also provide for the cost allocation to be applied to transmission facilities directed to be constructed by SPP. Midwest Energy supported SPP as a party to the underlying FERC proceedings, and Midwest Energy filed a timely request with FERC for rehearing of the Reversal Order, which was denied by the Rehearing Order. Rehearing Order, 185 FERC ¶ 61,189 at P 2.

Venue is proper in this Court pursuant to 16 U.S.C. § 825*l*(b). Midwest Energy timely filed this petition within 60 days of the Rehearing Order issued on December 19, 2023. *Id.*

Midwest Energy seeks review of the Rehearing Order on the grounds that it is arbitrary, capricious, and an abuse of discretion within the meaning of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*; violates federal law, including, but not limited to, the Federal Power Act, 16 U.S.C. § 791a *et seq.*, as well as

regulations promulgated under that statute; departs without explanation from FERC's precedent, including the Approval Order; and is otherwise contrary to law.

Accordingly, Midwest Energy respectfully requests that this Court hold unlawful, vacate, enjoin, and set aside the Rehearing Order, reinstate the Approval Order, and that it provide such additional relief as may be appropriate.

Dated:  February 16, 2024

Respectfully submitted,

/s/  *Helgi C. Walker*

Helgi C. Walker
  *Counsel of Record*
William R. Hollaway, Ph.D.
Janine Durand
Jeff Liu
Reed Sawyers
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
hwalker@gibsondunn.com
whollaway@gibsondunn.com
jdurand@gibsondunn.com
jyliu@gibsondunn.com
rsawyers@gibsondunn.com

*Counsel for Petitioner*
*Midwest Energy, Inc.*

4

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

MIDWEST ENERGY, INC.,

                Petitioner,

     v.

FEDERAL ENERGY REGULATORY
COMMISSION,

              Respondent.

Case No. 24-1032

## CORPORATE DISCLOSURE STATEMENT
## OF MIDWEST ENERGY, INC.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Midwest Energy, Inc. ("Midwest Energy") respectfully submits this Corporate Disclosure Statement. Midwest Energy is an incorporated, non-profit customer-owned electric and natural gas cooperative. Midwest Energy has no parent companies, and no publicly held company owns a ten percent or greater interest in Midwest Energy.

Dated: February 16, 2024

              Respectfully submitted,

              /s/ *Helgi C. Walker*
              Helgi C. Walker

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Appellate Procedure 15(c) and 25, I hereby certify that on February 16, 2024, I caused one copy of the foregoing Petition for Review to be served on the following by the manner indicated:

*By First Class Mail and*
*Electronic Mail*

**<u>Respondents</u>**

Matthew R. Christiansen
General Counsel, Federal Energy Regulatory
    Commission
888 First Street, N.E.
Washington, DC 20426
matthew.christiansen@ferc.gov

Robert Solomon
Solicitor, Federal Energy Regulatory
    Commission
888 First Street, N.E.
Washington, DC 20426
robert.solomon@ferc.gov

Kimberly D. Bose
Secretary, Federal Energy Regulatory
    Commission
888 First Street, N.E.
Washington, DC 20426
kimberly.bose@ferc.gov

*By Electronic Mail*

**Ameren Services Company**

Matthew Tomc
Ameren Corporation
1901 Chouteau Avenue, MC 1310
St. Louis, MO 63040
mtomc@ameren.com

Denice Simpson
Ameren Corporation
1331 Pennsylvania Avenue, N.W., Suite 550 South
Washington, DC 20004
dsimpson@ameren.com

**American Electric Power Service Corporation**

Stacey Burbure
LaChon Turner
American Electric Power
801 Pennsylvania Avenue, N.W.
Washington DC, 20004
slburbure@aep.com
lturner@aep.com

Mary-Kate Rigney
Troutman Pepper Hamilton Sanders LLP
301 South College Street, Suite 3400
Charlotte, NC 28202
mary-kate.rigney@troutman.com

Christopher Jones
Troutman Pepper Hamilton Sanders LLP
401 9th Street, N.W., Suite 1000
Washington DC, 20004
chris.jones@troutman.com

## Arkansas Electric Cooperative Corporation

John Coyle
Duncan & Allen LLP
1730 Rhode Island Avenue, N.W., Suite 700
Washington, DC 20036
jpc@duncanallen.com

## Basin Electric Power Cooperative

Mike Kraft
Matthew R. Kolling
Jeremy Voll
Basin Electric Power Cooperative
1717 East Interstate Avenue
Bismarck, ND 58503
mkraft@bepc.com
mkolling@bepc.com
jvoll@bepc.com

Jesse Halpern
Nicole S. Allen
Thompson Coburn LLP
1909 K Street, N.W., Suite 600
Washington, DC 20006
jhalpern@thompsoncoburn.com
nallen@thompsoncoburn.com

## City Utilities of Springfield, Missouri

John Coyle
Duncan & Allen LLP
1730 Rhode Island Avenue, N.W., Suite 700
Washington, DC 20036
jpc@duncanallen.com

**Evergy Kansas Central, Inc., Evergy Metro, Inc., and Evergy Missouri West, Inc.**

Patrick Smith
Evergy, Inc.
818 South Kansas Avenue
Topeka, KS 66612
Patrick.Smith@evergy.com

Denise M. Buffington
Kansas City Power & Light Company
Post Office Box 418679
Kansas City, KS 64141
Denise.Buffington@evergy.com

James Flucke
Every, Inc.
1200 Main Street
Kansas City, MO 64105
jim.flucke@evergy.com

**ITC Great Plains, LLC**

James Bixby
ITC Holdings Corp.
601 13th Street, N.W., Suite 710 S
Washington, DC 20005
jbixby@itctransco.com

**Kansas City, Kansas Board of Public Utilities**

Maurice L. Moss
Kansas City Board of Public Utilities
540 Minnesota Avenue
Kansas City, KS 66101
mmoss@bpu.com

Ashley Bond
John Coyle
Duncan & Allen LLP
1730 Rhode Island Avenue, N.W., Suite 700
Washington, DC 20036
amb@duncanallen.com
jpc@duncanallen.com

**Kansas Corporation Commission**

Carly Masenthin
Kansas Corporation Commission
1500 Southwest Arrowhead Road
Topeka, KS 66604
c.masenthin@kcc.ks.gov

**Kansas Electric Power Cooperative, Inc.**

Susan Cunningham
Mark F. Doljac
Rebecca A. Fowler
Kansas Electric Power Cooperative, Inc.
600 Southwest Corporate View
Topeka, KS 66615
scunningham@kepco.org
mdoljac@kepco.org
rfowler@kepco.org

**Missouri Joint Municipal Electric Utility Commission**

Heather Starnes
Healy Law Offices, LLC
12 Perdido Circle
Little Rock, AR 72211
heather@healylawoffices.com

John Coyle
Duncan & Allen LLP
1730 Rhode Island Avenue, N.W., Suite 700
Washington, DC 20036
jpc@duncanallen.com

**Oklahoma Gas & Electric Company**

DeAnn Aderholt
Amanda Reyes
William Sultemeier
Oklahoma Gas and Electric Company
321 North Harvey Avenue
Oklahoma City, OK 73102
aderhodm@oge.com
reyesar@oge.com
sultemwh@oge.com

**Public Utility Commission of Texas**

Stephen D. Journeay
Texas Public Utility Commission
1701 North Congress Avenue
Austin, TX 78701
stephen.journeay@puc.texas.gov

Debra Roby
Alan Robbins
Washington Energy Law LLP
900 17th Street, N.W., Suite 500-A
Washington, DC 20006
droby@washingtonenergylaw.com
arobbins@washingtonenergylaw.com

**Southwest Power Pool, Inc.**

Justin Hinton
Nicole Wagner
Michelle L. Harris
Southwest Power Pool Inc.
201 Worthen Drive
Little Rock, AR 72223
jhinton@spp.org
jwagner@spp.org
mharris@spp.org

**Southwest Transmission, LLC**

Christina Switzer
Michael R. Engleman
Engleman Fallon, PLLC
1717 K Street, N.W.
Washington, DC 20006
cswitzer@efenergylaw.com
mengleman@efenergylaw.com

Sharon Segner
LS Power Associates LP
1001 19th Street North, Suite 1200
Arlington, VA 22209
ssegner@lspower.com

Brenda Prokop
LS Power Associates LP
16150 Main Circle Drive, Suite 310
Chesterfield, MO 63017
bprokop@lspower.com

**Sunflower Electric Power Corporation**

Al Tamimi
Sunflower Electric Co-op Inc. (KS)
425 South 119th Street West
Wichita, KS 67235
atamimi@sunflower.net

Ray Bergmeier
Sunflower Electric Power Corporation
301 West 13th Street
Hays, KS 67601
rbergmeier@sunflower.net

Jecoliah R. Williams
Thompson Coburn LLP
1909 K Street, N.W., Suite 600
Washington, DC 20006
jwilliams@thompsoncoburn.com

**The Empire District Electric Company**

Sarah B. Knowlton
Liberty Utilities
116 North Main Street
Concord, NH 03301
sarah.knowlton@libertyutilities.com

Aaron Doll
Liberty Utilities
602 South Joplin Avenue
Joplin, MO 64801
aaron.doll@libertyutilities.com

Elizabeth Whittle
Nixon Peabody LLP
799 9th Street, N.W., Suite 500
Washington, DC 20001
ewhittle@nixonpeabody.com

**Washington Energy Law LLP**

Thomas Steiger
Washington Energy Law LLP
900 17th Street, N.W., Suite 500-A
Washington, DC 20006
tsteiger@washingtonenergylaw.com

**Western Area Power Administration**

Gary Hoffman
Western Area Power Administration
Post Office Box 281231
Lakewood, CO 80228
ghoffman@wapa.gov

Steven Sanders
Western Area Power Administration
2900 4th Avenue North, Room 600
Billings, MT 59102
sanders@wapa.gov

**Xcel Energy Services Inc.**

Bernard Liu
Excel Energy Services Inc.
414 Nicollet Mall Floor 7
Minneapolis, MN 55401
bernard.liu@xcelenergy.com

Dated:  February 16, 2024            Respectfully submitted,

                                    /s/ Helgi C. Walker
                                    Helgi C. Walker

# EXHIBIT A

185 FERC ¶ 61,189
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Willie L. Phillips, Acting Chairman;
James P. Danly, Allison Clements,
and Mark C. Christie.


| | |
|---|---|
| Southwest Power Pool, Inc. | Docket No. ER22-1846-004 |

ORDER ADDRESSING ARGUMENTS RAISED ON REHEARING

(Issued December 19, 2023)

1.      In an order issued October 28, 2022, the Commission accepted, subject to submission of a compliance filing, Southwest Power Pool, Inc.'s (SPP) proposed revisions to Attachment J (Recovery of Costs Associated with New Facilities) of its Open Access Transmission Tariff (Tariff) to establish a process through which, on a case-by-case basis, all of the costs of a transmission facility with a voltage level between 100 kV and 300 kV (Byway facility) can be allocated on a regional, postage-stamp basis.[1]  In an order on rehearing issued July 13, 2023, the Commission set aside the Tariff Order, rejecting SPP's proposal without prejudice, and dismissed SPP's compliance filing submitted in response to the Tariff Order.[2]

2.      On August 14, 2023, Sunflower Electric Power Corporation (Sunflower), Basin Electric Power Cooperative (Basin), Midwest Energy, Inc. (Midwest Energy), and Kansas Electric Power Cooperative, Inc. (together, Joint Parties) timely filed a request for rehearing of the Rehearing Order.  Pursuant to *Allegheny Defense Project v. FERC*,[3] the rehearing request filed in this proceeding may be deemed denied by operation of law.

---

[1] *Sw. Power Pool, Inc.*, 181 FERC ¶ 61,076 (2022) (Tariff Order).

[2] *Sw. Power Pool, Inc.*, 184 FERC ¶ 61,028 (2023) (Rehearing Order).

[3] 964 F.3d 1 (D.C. Cir. 2020) (en banc).

[Footnote continued on next page]

However, as permitted by section 313(a) of the Federal Power Act (FPA),[4] we are modifying the discussion in the Rehearing Order and continue to reach the same result in this proceeding, as discussed below.[5]

## I.      Background

3.      In 2010, the Commission accepted SPP's proposal to implement its Highway/Byway cost allocation method (Highway/Byway),[6] under which SPP allocates the costs of transmission facilities on a voltage threshold basis.[7]  For transmission facilities at 300 kV or above (Highway facilities), SPP allocates 100% of the costs on a regional, postage-stamp basis.[8]  For Byway facilities (those that are between 100 kV and 300 kV), SPP allocates 33% of the costs on a regional, postage-stamp basis and 67% of the costs to the SPP pricing zone in which the facilities are located.  For transmission

---

[4] 16 U.S.C. § 825l(a) ("Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b), the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter.").

[5] *Allegheny Def. Project*, 964 F.3d at 16-17.  The Commission is not changing the outcome of the Rehearing Order.  *See Smith Lake Improvement & Stakeholders Ass'n v. FERC*, 809 F.3d 55, 56-57 (D.C. Cir. 2015).

[6] *Sw. Power Pool, Inc.*, 131 FERC ¶ 61,252 (2010) (Highway/Byway Order), *reh'g denied*, 137 FERC ¶ 61,075 (2011).  In its order accepting the Highway/Byway cost allocation method, the Commission also accepted SPP's revisions to its unintended consequences review process, which is now known as the Regional Cost Allocation Review process.  *Id.* P 83.

[7] Generally, Highway/Byway cost allocation applies to new transmission facilities included in and constructed pursuant to SPP's Transmission Expansion Plan to ensure the reliability of SPP's transmission system, certain other qualifying network upgrades, and high priority upgrades.  SPP, Tariff, attach. J, § III. (16.0.0), § III.A.2.

[8] The Commission has explained that "postage-stamp" "refers to regionwide allocation of the cost of a transmission facility."  *Transmission Plan. & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, Order No. 1000, 136 FERC ¶ 61,051, at P 741 n.543 (2011), *order on reh'g*, Order No. 1000-A, 139 FERC ¶ 61,132, *order on reh'g & clarification*, Order No. 1000-B, 141 FERC ¶ 61,044 (2012), *aff'd sub nom. S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014).

[Footnote continued on next page]

facilities at or below 100 kV, SPP allocates 100% of the costs to the zone in which the facilities are located.[9]

4.      In 2021, SPP filed a proposal to establish a process through which entities could petition the SPP Board of Directors (SPP Board) to approve, on a case-by-case basis: (1) the prospective reallocation of costs of certain existing Byway facilities; or (2) the full allocation of costs of certain new Byway facilities so that they would be allocated as Highway facilities (i.e., 100% regionally).  The Commission rejected SPP's proposal, finding that it would grant the SPP Board too much discretion in allocating the costs of Byway facilities without clear standards for how its cost allocation decisions would be made.[10]  In so doing, the Commission also distinguished the proposal from:  (1) SPP's Base Plan Upgrade waiver process, which is limited in scope because only network upgrades identified under SPP's Aggregate Transmission Service Study process that do not otherwise meet the thresholds for Base Plan Upgrades are eligible; and (2) SPP's Transformer Waiver Process, finding that the number of facilities and amount of costs eligible for waivers under the proposal would be notably more expansive.[11]

## II.    SPP Filing

5.      On May 10, 2022, SPP submitted proposed revisions to its Tariff to establish a process through which, on a case-by-case basis, the costs of Byway facilities can be fully allocated to the SPP region on a postage-stamp basis, with a requested effective date of August 1, 2022.[12]

6.      SPP's proposed Tariff revisions specify that to be eligible for 100% regional, postage-stamp cost allocation under the proposed process, an entity must submit a written request to SPP, along with supporting information and analysis, and must satisfy a Capacity Criterion, Flow Criterion, and Benefit Criterion.  To meet the Capacity Criterion, an applicant must show that the total nameplate capacity of generating resources that are physically connected in the zone where the Byway facility is located (and that are not affiliated with load in that zone) exceeds 100% of the prior calendar

---

[9] SPP, Tariff, attach. J, § III.A.2.i.  For network upgrades associated with designated resources that are wind generation resources where the upgrade is located in a different zone than the point of delivery, the costs of facilities 300 kV and above are allocated 100% to the region and the costs of facilities below 300 kV are allocated     67% to the region and 33% to the transmission customer.  *Id.* §§ III.A.3, III.A.4.

[10] *Sw. Power Pool, Inc.*, 175 FERC ¶ 61,198, at PP 38-39 (2021) (Rejection Order).

[11] *Id.* P 41.

[12] SPP 2022 Transmittal at 1.

[Footnote continued on next page]

year's average 12-CP resident load used in calculating the base plan zonal load ratio share for the zone.[13]  To meet the Flow Criterion, an applicant must show that the energy flow on each Byway facility that is attributed to generating resources physically connected in the zone where the Byway facility is located and that are not affiliated with load in that zone exceeds 70% of the sum of flows on the Byway facility attributed to: (1) generating resources affiliated with the load in the zone where the Byway facility is located; and (2) generating resources that are physically connected in the zone and not affiliated with load in the zone.[14]  Lastly, to meet the Benefit Criterion, an applicant must show that the Byway facility for which it is requesting 100% regional, postage-stamp cost allocation provides benefits to load outside the pricing zone where the Byway facility is located.  Benefits may be quantified in terms of adjusted production cost savings or savings through the Integrated Marketplace.  Sufficient benefit to load outside the pricing zone is demonstrated if the benefit exceeds either:  (1) 50% of the Byway facility's projected total benefit to load in the SPP region; or (2) the portion of the Byway facility's annual revenue requirement projected to be borne by load outside the Byway facility's zone under 100% regional, postage-stamp cost allocation.[15]

7.    SPP stated that its proposal is similar in design to the existing Base Plan Upgrade Waiver Process[16] and the Transformer Waiver Process.[17]  SPP noted that in the

---

[13] SPP, Proposed Tariff, attach. J, § III.E.2.a (13.1.0).

[14] *Id.* § III.E.2.b.

[15] *Id.* § III.E.2.c.

[16] Under the Base Plan Upgrade Waiver Process, transmission customers may seek waiver so that costs for network upgrades identified under SPP's Aggregate Transmission Service Study process, SPP's process for evaluating long-term transmission service requests, may be classified as Base Plan Upgrade costs for the purpose of cost allocation instead of being directly assigned to the transmission customer.  SPP Tariff, attach. J, § III.C.

[17] SPP 2022 Transmittal at 25 (citing SPP, Tariff, attach. J, § III).  Under the Transformer Waiver Process, entities developing a dual-voltage transformer could seek a waiver from the SPP Board of the standard Highway/Byway cost allocation, under which the costs of a dual-voltage transformer are allocated based on the lower voltage level.  Based on the anticipated utilization of the transformer, the entity may seek waiver to allocate the costs of the transformer based on the transformer's higher voltage level instead of the lower voltage level.  SPP, Tariff, attach. J, § III; *Sw. Power Pool, Inc.*, 132 FERC ¶ 61,042, at PP 17, 87 (2010), *order denying reh'g and granting clarification*, 136 FERC ¶ 61,050 (2011); *see also Sw. Power Pool, Inc.*, Docket No. ER10-2244-000, at 1 (Feb. 2, 2011) (delegated order).

[Footnote continued on next page]

Commission's acceptance of the Base Plan Waiver Upgrade Process, the Commission stated that SPP must have some degree of flexibility in making cost allocation determinations and did not find that the Base Plan Waiver Upgrade Process gave the SPP Board too much discretion.[18]

8.    On July 28, 2022, Commission staff issued a letter in Docket No. ER22-1846-000 informing SPP that its filing was deficient and requesting additional information (Deficiency Letter).  On August 29, 2022, SPP filed in Docket No. ER22-1846-001 its response to the Deficiency Letter (Deficiency Response).  In response to Commission staff's questions regarding the basis upon which the SPP Board would approve or deny a cost allocation waiver request, SPP stated that, pursuant to its bylaws, "the SPP Board's votes must be held by secret ballot," but that "the SPP Board will base its decision only on whether the Capacity, Flow, and Benefit Criteria are satisfied and shall not consider other factors."[19]

## III.    Tariff Order

9.    The Commission in the Tariff Order accepted SPP's proposed Tariff revisions, subject to condition, effective August 1, 2022, and directed SPP to submit a compliance filing.  The Commission found that SPP's proposal to establish a process through which, on a case-by-case basis, the costs of Byway facilities can be fully allocated to the SPP region on a postage-stamp basis is just and reasonable and not unduly discriminatory or preferential because it will help ensure that the costs of Byway facilities are allocated in a manner that is at least roughly commensurate with estimated benefits, consistent with the cost causation principle.[20]  Moreover, the Commission found that allocating 100% of a Byway facility's costs to the SPP region on a postage-stamp basis if the facility is shown to provide significant benefits to zones other than the zone in which the Byway facility is located will better align the allocation of the costs of the Byway facility with its beneficiaries.[21]

10.    The Commission found that it is reasonable for SPP to analyze benefits under the Benefit Criterion based on adjusted production cost savings and/or savings through the Integrated Marketplace due to the Commission's prior acceptance of cost allocation

---

[18] SPP 2022 Transmittal at 25 (citing *Sw. Power Pool, Inc.*, 111 FERC ¶ 61,118, at P 57 (SPP Base Plan Upgrades Order), *order on reh'g*, 112 FERC ¶ 61,319 (2005); *Sw. Power Pool, Inc.*, 132 FERC ¶ 61,042 at PP 86-88).

[19] *See* Tariff Order, 181 FERC ¶ 61,076 at P 36 (citing Deficiency Response at 7-9).

[20] *Id.* PP 47-48.

[21] *Id.* P 48.

[Footnote continued on next page]

proposals based on these types of transmission facility benefits.[22]  The Commission also found that SPP's proposal addressed the concerns that the Commission articulated in the Rejection Order regarding discretion because the proposal establishes clear eligibility criteria – the Capacity, Flow, and Benefit Criteria – and limits the SPP Board's consideration to whether a Byway facility meets those criteria when deciding whether to grant or deny a request for 100% regional postage-stamp cost allocation.[23]

11.    The Commission, however, found that there were two aspects of the proposed Tariff language that did not provide sufficient specificity about the limitations on SPP's discretion that SPP articulated in its Deficiency Response.  First, the Commission directed SPP to revise its proposed Tariff language by replacing "may" with "shall" in relation to how the SPP Board quantifies the benefit of a Byway facility so that it states that "[t]he benefit *shall* be quantified in terms of adjusted production cost and/or savings through the Integrated Marketplace."[24]

12.    Second, the Commission also found that the proposed Tariff language did not specify the basis upon which the SPP Board will make its decision to approve or deny a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region.  The Commission noted that, in the Deficiency Response, SPP stated that the discretion exercised by the SPP Board is limited only to whether the Capacity, Flow, and Benefit Criteria have been met, and that the SPP Board does not have the discretion to approve a request when one or more of the specified criteria have not been met or to substitute alternative criteria in lieu of those defined in the proposed Tariff language.[25]  Therefore, the Commission directed SPP to add subsection ii to section III.E.5.j of SPP's Tariff to specify that the SPP Board's decision to approve or deny a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region will be based solely on whether the Capacity, Flow, and Benefit Criteria are satisfied.[26]

13.    Further, the Commission found that, contrary to protesters' arguments that reallocation of transmission costs would undermine transparency and predictability in

---

[22] *Id.* P 51 (citing *Midcontinent Indep. Sys. Operator, Inc.*, 170 FERC ¶ 61,242, at P 31 (2020); *Sw. Power Pool, Inc.*, Docket Nos. ER18-2243-000 and ER18-2245-000 (Oct. 10, 2018) (delegated order)).

[23] *Id.* P 53.

[24] SPP, Proposed Tariff, attach. J, § III.E.2.c.

[25] Tariff Order, 181 FERC ¶ 61,076 at P 55 (citing Deficiency Response at 9-10).

[26] *Id.*

[Footnote continued on next page]

cost allocation, the process for evaluating a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region will be described in the Tariff with adequate  specificity once SPP satisfies the Commission's directives in the Tariff Order.[27]

14.    The Commission found that SPP's proposal, like other aspects of SPP's Tariff approved by the Commission that provide flexibility to SPP's board regarding cost allocation, will provide the SPP Board with flexibility in cost allocation for specific Byway facilities, on a case-by-case basis, under specified conditions that are clearly outlined in the Tariff.  The Commission noted that regional transmission organizations/independent system operators (RTO/ISO), as independent entities, have governing boards with some discretion in making decisions related to transmission planning and cost allocation.[28]

## IV.    Compliance Filing

15.    On November 16, 2022, SPP submitted a compliance filing in response to the Tariff Order (Compliance Filing).  In its Compliance Filing, SPP submitted revised Tariff sheets that:  (1) revise section III.E.2.c of Attachment J of the Tariff to state that benefits from a proposed cost allocation "shall be quantified in terms of adjusted production cost and/or savings through the Integrated Marketplace;" and (2) add a new subsection ii in section III.E.5.j of Attachment J of the Tariff such that a decision by the Board to approve or deny a request for waiver shall be based solely on whether the three criteria in section III.E.2 of the Tariff are all satisfied.[29]

## V.    Rehearing Order

16.    In response to requests for rehearing of the Tariff Order filed by Indicated Transmission Owners[30] and Indicated Utilities,[31] the Commission in the Rehearing Order set aside the Tariff Order and rejected SPP's proposal in this proceeding.  The

---

[27] *Id.* P 56.

[28] *Id.* P 60 (citing SPP Base Plan Upgrades Order, 111 FERC ¶ 61,118 at P 57).

[29] SPP Compliance Filing, Docket No. ER22-1846-002 (filed Nov. 16, 2022) (emphasis to highlight added revision).

[30] Indicated Transmission Owners consist of Southwestern Electric Power Company, Public Service Company of Oklahoma, Southwestern Public Service Company, and Oklahoma Gas & Electric Company.

[31] Indicated Utilities consist of City Utilities of Springfield, Missouri, Kansas City Board of Public Utilities, and Missouri Joint Municipal Electric Utility Commission.

[Footnote continued on next page]

Commission found that SPP had not met its burden under section 205 of the FPA[32] to show that the process that SPP proposed for allocating 100% of the costs of a Byway facility to the SPP region on a postage-stamp basis will result in outcomes that are just and reasonable and not unduly discriminatory or preferential. Given that it rejected SPP's proposal, the Commission also dismissed as moot SPP's Compliance Filing.

17.    The Commission found that SPP's proposal, even as modified by the Commission's directives in the Tariff Order, continues to grant the SPP Board too much discretion in allocating the costs of Byway facilities, and that SPP's revisions to its Tariff do not fully address the Commission's earlier concerns with the discretion afforded to the SPP Board.[33]  The Commission stated that it need not address the other arguments raised on rehearing because it set aside the Tariff Order on the basis that SPP's proposal provided too much discretion to the SPP Board.[34]

18.    The Commission found that, despite the proposed Tariff language limiting the basis upon which the SPP Board could reallocate the costs of a Byway facility to the entire SPP region, the proposed Tariff language still allows for a significant amount of discretion because it does not require the SPP Board to approve a reallocation request if the criteria are met.  Thus, the Commission stated, the SPP Board could deny a requested reallocation where SPP staff has determined that the criteria are met or, conversely, approve a reallocation where SPP staff has determined that the criteria are not met.  The Commission reasoned that the SPP Board's discretion to make decisions that are potentially inconsistent with whether the criteria set forth in the Tariff are met could result in unduly discriminatory outcomes.[35]

19.    The Commission found that SPP's proposal, even as modified by the compliance directive in the Tariff Order, creates the opportunity for arbitrary and inconsistent outcomes because the proposed Tariff language does not define the circumstances under which the two types of benefits used for the Benefit Criterion (adjusted production cost savings and savings in the Integrated Marketplace), or both, will be considered.  The Commission stated that, under SPP's proposal, as modified by the compliance directive, the SPP Board would be allowed to rely on one type of benefit when reviewing one request, and another type of benefit when reviewing another request, regardless of whether the circumstances of both requests were identical.  The Commission concluded

---

[32] 16 U.S.C. § 824d.

[33] *See* Rehearing Order, 184 FERC ¶ 61,128 at P 50 (citing Rejection Order, 175 FERC ¶ 61,198 at PP 40-41).

[34] *Id.* P 50 n.86.

[35] *Id.* P 51.

[Footnote continued on next page]

that this potential for disparate treatment raises the potential for unduly discriminatory cost allocation outcomes.[36]

20.    The Commission recognized that the RTO/ISO model provides an element of discretion to an RTO/ISO's board of directors.  But the Commission found that SPP's proposal would provide the SPP Board with the discretion to change which cost allocation method applies to specific Byway facilities after they have been selected as a Byway facility.  The Commission concluded that SPP has not demonstrated that the way it has proposed to extend the SPP Board's discretion is just and reasonable and not unduly discriminatory or preferential.[37]

## VI.    Request for Rehearing

21.    Joint Parties argue that the Commission's decision in the Rehearing Order to reject SPP's proposal and compliance filing is arbitrary and capricious, departs from Commission precedent, and fails to consider the record in this proceeding.  According to Joint Parties, reverting to SPP's current Highway/Byway cost allocation method is unjust, unreasonable, and unduly discriminatory and preferential as applied in the few SPP pricing zones where generation that is not affiliated with load in the zone significantly exceeds the amount of load in the zone (i.e., "Generation-Rich Zones").[38]  Joint Parties urge the Commission either to:  (1) grant rehearing of the Rehearing Order, reinstate SPP's Tariff proposal, effective August 1, 2022, and accept SPP's compliance filing; or (2) take measures such as establishing hearing and settlement judge procedures or initiating a proceeding, *sua sponte*, under FPA section 206.[39]

22.    Joint Parties represent that the Rehearing Order imposes costs on customers in certain geographic areas in SPP that do not receive commensurate benefits, particularly at a time when there is an influx of wind generation resources on the SPP system.  Joint Parties assert that the Commission's rejection, then acceptance, and later rejection of SPP's proposals have caused parties to spend considerable resources over several years, failed to address ongoing cost burdens on customers in certain SPP pricing zones, and encouraged costly litigation before the Commission.[40]

---

[36] *Id.* P 52.

[37] *Id.* P 54.

[38] Request for Rehearing at 3-4.

[39] *Id.* at 4 (citing 16 U.S.C. § 824e).

[40] *Id.* at 4-8.

## VII.    Discussion

### A.    Procedural Issues

23.    On September 1, 2023, the Kansas Corporation Commission filed a motion for leave to answer and answer in response to Joint Parties' request for rehearing of the Rehearing Order. Rule 713(d)(1) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.713(d) (2022), prohibits an answer to a request for rehearing. Accordingly, we deny the Kansas Corporation Commission's motion for leave to answer to the request for rehearing and reject the answer.

24.    On September 6, 2023, in Docket No. ER22-1846-000, Senators Roger Marshall and Jerry Moran submitted comments urging the Commission to reinstate the Tariff Order that accepted SPP's proposal.

### B.    Substantive Issues

#### 1.    Whether the Commission Sufficiently Explained its Reversal of the Tariff Order and Departed from Precedent Granting Discretion to other RTOs

##### a.    Request for Rehearing

25.    Joint Parties argue that there are no changed circumstances since the Tariff Order, and the Commission failed to explain why it reversed its determination in the Tariff Order that SPP's proposal sufficiently addressed the Commission's concerns in the Rejection Order regarding the SPP Board's discretion to make cost allocation decisions.[41] Joint Parties state that the Commission's finding in the Rehearing Order that SPP's proposal provides too much discretion to the SPP Board departs from Commission precedent granting RTO/ISO boards discretion and flexibility over rates and cost allocation, such as: (1) the SPP Base Plan Upgrade Waiver Process that allows the SPP Board to reclassify a new or changed Designated Resource as a Base Plan Upgrade; (2) the SPP Board's ability to approve proposed Interregional Projects; and (3) PJM Interconnection, L.L.C.'s (PJM) Office of Interconnection authority to resolve financial transmission rights (FTR) defaults.[42]

26.    Joint Parties state that SPP's Base Plan Upgrade Waiver Process provides the SPP Board with the discretion to reclassify a new or changed Designated Resource as a Base

---

[41] *Id.* at 11-13.

[42] *Id.* at 14-19.

[Footnote continued on next page]

Plan Upgrade based on a non-exhaustive list of factors.[43]  Joint Parties represent that SPP acknowledged that any authority that it exercised under the proposal in the instant proceeding had to comply with the FPA.  Joint Parties describe PJM's Office of Interconnection's authority to resolve disputes over FTR defaults as restricted by the limits of the FPA and broader than the SPP Board's proposed authority that the Commission rejected in the Rehearing Order.[44]  Joint Parties state that the fact that in PJM, the Office of Interconnection was granted the discretionary authority at issue whereas in this proceeding, the SPP Board wields the relevant discretion, does not justify the Commission's disparate treatment.[45]  According to Joint Parties, "[t]he Commission has not at all explained or justified its policy whereby on the one hand, an RTO can have broad discretion because the FPA provides protection against discriminatory treatment but on the other hand, an RTO Board cannot exercise far more narrow discretion, when the FPA applies in both instances."[46]

27.     Joint Parties state that the Commission did not explain why it is permissible for RTO boards to determine which transmission facilities are selected in a regional transmission plan for purposes of cost allocation while, here, it is impermissible for the SPP Board to determine under narrow criteria which cost allocation method applies to those transmission facilities.[47]

28.     Joint Parties state that SPP already addressed the Commission's concerns that the SPP Board could only approve a request for cost allocation where the three criteria are met.  According to Joint Parties, SPP confirmed that SPP Board discretion is limited to whether all criteria are met and the SPP Board must decide whether the evidence shows that all three criteria are satisfied.  Joint Parties also state that SPP represented that the SPP Board must reject a waiver application if any of the three criteria are not met.  Joint Parties argue that the Commission in the Rehearing Order did not address SPP's explanation that the SPP Board could not "deny or approve a waiver request where the criteria for the waiver are or are not met, respectively."[48]

---

[43] *Id.* at 15 (citing Tariff Order, 181 FERC ¶ 61,076 at PP 57, 60 & n.129; SPP Base Plan Upgrades Order, 111 FERC ¶ 61,118 at P 57).

[44] *Id.* at 15-18 (citing *PJM Interconnection, L.L.C.*, 174 FERC ¶ 61,064, at PP 5, 16, 27, 31 (2021) (PJM FTR Order); SPP Deficiency Response at 11).

[45] *Id.* at 18 n.46.

[46] *Id.* at 17-18 (citing Tariff Order, 181 FERC ¶ 61,076 at PP 48, 54).

[47] *Id.* at 18-19.

[48] *Id.* at 20-21 (citing SPP Deficiency Response at 8, 10; SPP Tariff, attach. J, § III.E.2).

[Footnote continued on next page]

b.      **Commission Determination**

29.      As an initial matter, the Commission may reverse its prior position as long as the Commission reasonably explains itself, but it does not need to establish that its newer position is superior to the Commission's earlier position.[49]  The Commission in the Rehearing Order reasonably explained that it set aside its prior acceptance of SPP's proposal because that proposal permits the SPP Board to "deny a requested reallocation where SPP staff has determined that the criteria are met or, conversely, approve a reallocation where SPP staff has determined that the criteria are not met."[50]  The Commission also found that, while those criteria must be met in order for the SPP Board to approve a requested reallocation, "there is no proposed requirement for the SPP Board to approve the request if the Byway facility satisfies the three criteria."[51]  In other words, a request to reallocate the costs of a Byway facility that satisfies the criteria may be granted only if the SPP Board exercises its discretion to do so – regardless of whether some or all of the three criteria are met.  We find that that there is potential for unduly discriminatory or preferential outcomes among otherwise similarly situated Byway facilities given the SPP's Board's discretion as described above.  The Commission reasonably found that SPP's Tariff did not require the SPP Board to reach specific results if certain criteria are satisfied and that, without those requirements, SPP had proposed to provide too much discretion to its Board.[52]

30.      While we reiterate the Commission's recognition in the Rehearing Order that "the RTO/ISO model provides an element of discretion to an RTO/ISO's board of directors,"[53] we disagree with Joint Parties that the Commission ran afoul of its precedent affording discretion to RTOs/ISOs.  In Order No. 1000, the Commission provided discretion to public utility transmission providers in a transmission planning region as to how transmission needs are identified, as well as how and whether transmission facilities, including interregional transmission facilities, as noted by the Joint Parties,[54] are selected

---

[49] *Ass'n of Oil Pipe Lines v. FERC*, 876 F.3d 336, 342 (D.C. Cir. 2017) (The Commission "need not demonstrate 'that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible . . . , that there are good reasons for it, and that the agency *believes* it to be better.'" (quoting *FCC v. Fox Television Studios, Inc.*, 556 U.S. 502, 515 (2009) (emphasis by Supreme Court))).

[50] Rehearing Order, 184 FERC ¶ 61,028 at P 51.

[51] *Id.*

[52] *Id.*

[53] *Id.* P 54.

[54] Request for Rehearing at 15.

[Footnote continued on next page]

in the regional transmission plan for the purposes of cost allocation to meet those needs.[55]  In contrast, Order No. 1000, while not specifying how the costs of an individual regional transmission facility should be allocated, provides that *ex ante* cost allocation methods must be known "in advance."[56]  As observed by the Commission in the Rehearing Order, "SPP's proposal would provide the SPP Board with the discretion to change which cost allocation method applies to specific Byway facilities after they have been selected as a Byway facility."[57]  We find that the discretion afforded to the SPP Board in the Byway cost allocation reallocation process would reduce the certainty as to

---

[55] *See, e.g.*, Order No. 1000, 136 FERC ¶ 61,051 at P 12 ("The transmission planning and cost allocation requirements in this Final Rule . . . are focused on the transmission planning *process*, and not on any substantive outcomes that may result from this process."), P 149 (providing "public utility transmission providers in each transmission planning region the flexibility to develop, in consultation with stakeholders, procedures by which the public utility transmission providers in the region identify and evaluate the set of potential solutions that may meet the region's needs more efficiently or cost-effectively"), P 157 (declining to "prescribe the exact manner in which public utility transmission providers must fulfill the requirements of complying with the regional transmission planning principles" and allowing "public utility transmission providers developing the regional transmission planning processes to craft, in consultation with stakeholders, requirements that work for their transmission planning region"), P 331 (clarifying that "the Commission is not dictating that any particular proposals be accepted or that selected transmission facilities be constructed").

[56] *See, e.g.*, *id.* P 560 (noting that "different cost allocation method or methods for different types of transmission facilities" are permissible, but "each method would have to be determined in advance for each type of facility"), P 562 (requiring "development of a cost allocation method or a set of methods in advance of particular transmission facilities being proposed so that developers have greater certainty about cost allocation and other stakeholders will understand the cost impacts of the transmission facilities proposed for cost allocation in transmission planning").

[57] Rehearing Order, 184 FERC ¶ 61,028 at P 54.

[Footnote continued on next page]

the cost allocation of potential Byway transmission facilities; thus, rejecting the proposal is consistent with the *ex ante* principle in Order No. 1000.[58]

31.    In their request for rehearing, Joint Parties argue that the Commission in the Rehearing Order departed from Commission precedent without explanation, referring to the SPP Board's discretion to reclassify certain network upgrades as Base Plan Upgrades and PJM's discretion to resolve defaults in the PJM FTR market.[59]  We acknowledge that the Base Plan Upgrade Waiver Process provides the SPP Board with discretion regarding which non-exhaustive criteria it may consider when reclassifying certain network upgrade costs to be eligible for regional transmission cost allocation.[60]  Such network upgrades are not regional transmission facilities selected in SPP's regional transmission plan for purposes of cost allocation and, as such, are not subject to Order No. 1000's *ex ante* cost allocation requirement.  Instead, as the Commission previously acknowledged, the process that SPP uses to evaluate the need for network upgrades to address individual requests for transmission service "does not address broader regional transmission needs, consider transmission needs driven by public policy requirements, or alleviate congestion as necessary to consider it a regional transmission planning process under Order No. 1000," and thus, it "is not an Order No. 1000 regional transmission planning process."[61]  As a result, SPP's Base Plan Upgrade Waiver Process waiver criteria need not conform with Order No. 1000's rules regarding *ex ante* cost allocation.  Here, by contrast, Byway facilities are part of SPP's regional transmission planning process under Order No. 1000

---

[58] *See* Order No. 1000, 136 FERC ¶ 61,051 at PP 499 ("We agree with many commenters that the lack of clear *ex ante* cost allocation methods that identify beneficiaries of proposed regional and interregional transmission facilities may be impairing the ability of public utility transmission providers to implement more efficient or cost-effective transmission solutions identified during the transmission planning process."), P 559 ("In the absence of clear cost allocation rules for regional transmission facilities, there is a greater potential that public utility transmission providers and nonincumbent transmission developers may be unable to develop transmission facilities that are determined by the region to meet their needs.  Conversely, greater certainty as to the cost allocation implications of a potential transmission project will enhance the ability of stakeholders in the regional transmission planning process to evaluate the merits of the transmission project.").

[59] *See* Request for Rehearing at 15-19.

[60] *See* SPP Tariff, attach. J, § III.C.1.

[61] *Sw. Power Pool, Inc.*, 149 FERC ¶ 61,048, at P 173 (2014), *aff'd sub nom. Okla. Gas & Elec. Co. v. FERC*, 827 F.3d 75 (D.C. Cir. 2016).

[Footnote continued on next page]

and, therefore, they are subject to Order No. 1000's requirement that there be an *ex ante* regional cost allocation method.

32.     Additionally, our concerns regarding the extent of the SPP Board's discretion under SPP's proposal are elevated here because, under SPP's proposed process, the Board does not set out its decision to grant or deny a request to reallocate the costs of Byway facilities.[62]  Without such particulars, stakeholders will be unable to discern whether the SPP Board has applied the criteria in a manner that is not unduly discriminatory or preferential.

33.     Moreover, as the Commission explained in the Rejection Order, "[t]he Base Plan Upgrade waiver process . . . is limited in scope because only network upgrades identified under SPP's Aggregate Transmission Service Study process that do not otherwise meet the thresholds for Base Plan Upgrades under that process are eligible."[63]  By contrast, under SPP's proposal in this proceeding, like SPP's proposal that the Commission rejected in the Rejection Order, all Byway facilities are eligible to seek a reallocation of costs, and that fact of SPP's proposal could reach farther than the Base Plan Upgrade waiver process.  Our concerns regarding the scope of the two different programs outweigh the fact that both the Base Plan Upgrade waiver process and SPP's proposal in this proceeding relate to regional transmission cost allocation and bestow discretion upon the SPP Board to grant a cost reallocation request.  As suggested by the Rejection Order, we find it appropriate to consider the scope of facilities subject to reallocation, among other factors addressed in the Rehearing Order and here, when evaluating the SPP Board's discretion under SPP's proposal given the potential for significant cost reallocation.  Further, whether PJM's Tariff affords more discretion in evaluating FTR defaults than SPP's proposal affords the SPP Board in evaluating Byway cost allocation waiver requests is not relevant.  The Commission's rules regarding *ex ante* cost allocation methods under Order No. 1000 apply to transmission facilities selected in the regional transmission plan for purposes of cost allocation, which we must consider when

---

[62] While the SPP Board votes in secret, this feature of SPP's Board governance is not at issue in this proceeding nor do we suggest any deficiency in the SPP Board's voting procedures.  *See* SPP, Governing Documents Tariff, § 4.6 Bylaws (Functioning of the Board of Directors), § 4.6.3 (Quorum and Voting) (3.0.0) ("Voting will be by secret ballot submitted either in person or remotely by email or other reliable electronic means.  The Corporate Secretary will collect and tally the ballots, and announce the results of a vote.  Only voting results will be announced and recorded in the minutes; individual votes will not be announced or recorded.").

[63] Rejection Order, 175 FERC ¶ 61,198 at P 41 (footnote omitted) (citing SPP Tariff, attach. J, § III.C.1).  The Aggregate Transmission Service Study process is SPP's process for evaluating long-term transmission service requests.  *Id.* P 41 n.78.

evaluating a request such as the one here to allow reallocation of the cost of a Byway facility, and do not apply to FTR defaults.

   2.  **Whether the Commission Ignored Evidence that SPP's Existing Tariff Unjustly and Unreasonably Allocates Costs of Byway Facilities to Zones where the Costs Significantly Exceed the Benefits**

    a.  **Request for Rehearing**

34. Joint Parties argue that the evidence from SPP, the SPP Cost Allocation Working Group, Sunflower, and Midwest Energy in this proceeding shows that SPP's existing Highway/Byway transmission cost allocation method is unjust and unreasonable and does not reflect cost causation principles in the pricing zones where generation unaffiliated with load in the zone significantly exceeds the amount of load in the zone. Joint Parties state that growth in renewable energy resources in pricing zones far from load they serve have unaffiliated nameplate generation capacity physically connected in these zones that exceeds the entire average peak loads in these zones. Joint Parties contend that the Sunflower, Midwest Energy, and Oklahoma Gas & Electric pricing zones have been disproportionately affected by the growth of renewable wind generation resources that include notifications to construct Byway Facilities to facilitate the export of wind energy to other areas in SPP.[64]

35. Joint Parties state that SPP's 2019 Holistic Integrated Tariff Team Report recognized the disproportionate allocation for transmission upgrades to facilitate the export of excess renewable energy in SPP. Joint Parties describe that report as recommending that SPP establish a narrow process to fully allocate costs for specific transmission projects between 100 and 300 kV on a region-wide basis based on the regional benefits from these facilities.[65] Joint Parties also cite several experts' affidavits that demonstrate the need for SPP's proposal in this proceeding.[66]

36. Joint Parties argue that no party to this proceeding disputes the low benefits entities in the "Generation-Rich Zones" receive in exchange for the heavier cost burdens these entities must carry to support Byway facilities, regardless of the benefits accruing to

---

[64] Request for Rehearing at 22-23 (citing SPP Filing at 9-13; Sunflower, Basin, and Midwest Comments, Docket No. ER22-1846-000, at 11, attach. A, B (filed May 31, 2022)).

[65] *Id.* at 24 (citing SPP Filing at 2-4 (citing SPP, Holistic Integrated Tariff Team Report, at 46 (July 23, 2019), https://www.spp.org/documents/60323/hitt%20report.pdf)).

[66] *Id.* at 24-27 (citing Supporting Parties' Comments, Tamimi Aff. ¶¶ 4-5, 8; Supporting Parties' Comments, Dowling Aff. ¶¶ 5-6).

[Footnote continued on next page]

the entire SPP region. Joint Parties contend that the Commission in the Rehearing Order failed to address the evidence of unjust and unreasonable rates entities will incur from reverting to the prior Highway/Byway process.[67] Joint Parties assert that, without any mechanism to remedy the unjust and unreasonable cost allocation for the Sunflower and Midwest Energy pricing zones, customers in these zones will bear an unreasonable share of the cost of Byway facilities used to transmit generation that is not affiliated with load in the zone from these zones to the SPP region, and customers outside of these zones who benefit from these Byway facilities will not have to pay for costs commensurate with their benefits.[68]

### b.     Commission Determination

37.    We recognize that SPP has stated that it proposed the process through which, on a case-by-case basis, costs of certain Byway facilities can be allocated on a regional, postage-stamp basis to rectify perceived problems with the status quo and that SPP stakeholders devoted substantial time and resources to address those perceived problems through SPP's proposal. However, Joint Parties' arguments about SPP's existing Highway/Byway cost allocation method being unjust and unreasonable are misplaced in a proceeding addressing a filing made under FPA section 205. The proper vehicle for challenging existing tariff provisions as unjust and unreasonable is a complaint under FPA section 206.[69] In an FPA section 205 proceeding, the Commission is limited to reviewing whether the filed proposal is just, reasonable, and not unduly discriminatory or preferential.[70] Here, the Commission concluded the proposal was not just and reasonable because it provided the SPP Board with too much discretion in allocating the costs of Byway Facilities, which is particularly concerning given that waiver of Byway facility cost allocation would undermine Order No. 1000's requirement that the transmission cost allocation method be determined in advance, that every Byway facility could be eligible for cost reallocation under SPP's proposal, and that the SPP Board need not articulate its reasons for granting waiver of Byway facility cost allocation.[71] With regard to Joint Parties' argument that the Commission failed to consider the evidence justifying the need

---

[67] *Id.* at 25-27.

[68] *Id.* at 27-28.

[69] 16 U.S.C. § 824e.

[70] *Id.* § 824d; *see also City of Winnfield v. FERC*, 744 F.2d 871, 874-75 (D.C. Cir. 1984) ("As is evident, § 205, unlike § 206, allows the Commission to approve rate increases without a showing that current rates are unjust and unreasonable; it need only find the *proposed* rates to be just and reasonable.").

[71] Rehearing Order, 184 FERC ¶ 61,028 at P 50.

[Footnote continued on next page]

for SPP's proposal in this proceeding,[72] any evidence of a need for the proposal does not overcome the Commission's finding that the proposal was not just and reasonable due to concerns that it provided too much discretion to the SPP Board and could result in unduly discriminatory outcomes if the SPP Board reaches opposing conclusions for otherwise nearly identical facilities.

3.    **Whether the Commission Unreasonably Dismissed SPP's Compliance Filing that Addressed Concerns about SPP Board Discretion**

a.    **Request for Rehearing**

38.    Joint Parties argue that, because the Commission erred in reversing the Tariff Order, the Commission also erred in dismissing as moot SPP's compliance filing in response to the Tariff Order.  Joint Parties urge the Commission to reinstate the Tariff Order and to accept SPP's compliance filing.[73]

b.    **Commission Determination**

39.    Consistent with the Commission's finding in the Rehearing Order, we continue to dismiss as moot SPP's compliance filing responding to the Tariff Order.  The Commission in the Rehearing Order rejected SPP's proposal in this proceeding and found "that SPP's proposal, *even as modified by the Commission's directives in the Tariff Order*, continues to grant the SPP Board too much discretion in allocating the costs of Byway facilities."[74]  For the reasons stated above, we continue to find that SPP's proposal, as modified by the Commission's directives in the Tariff Order, is not just and reasonable.  We sustain the decision to reject SPP's compliance filing as moot given that determination.

4.    **Whether the Commission Erred in Finding the Possibility that the SPP Board Could Grant a Cost Reallocation Request Raises the Potential for Unduly Discriminatory Outcomes**

a.    **Request for Rehearing**

40.    Joint Parties argue that the Commission in the Rehearing Order failed to explain why SPP's proposal permits the SPP Board to treat cost allocation waiver requests differently with potentially disparate treatment and unduly discriminatory outcomes.  In particular, Joint Parties assert that the Commission failed to justify departing from its finding in the Tariff Order that it was reasonable to determine whether a Byway facility

---

[72] *See* Request for Rehearing at 22-30.

[73] *Id.* at 31-32.

[74] Rehearing Order, 184 FERC ¶ 61,028 at P 50 (emphasis added).

met the Benefits criterion based on at least one of two methods that the Commission has previously found reasonable – adjusted production cost savings and savings through the Integrated Marketplace. Joint Parties describe the Commission as effectively deciding that the existence of options may lead to unduly discriminatory outcomes and prohibiting any tariff provision that permits analysis of a request for waiver of Byway facilities cost allocation based on more than one factor.[75] Joint Parties maintain that the Commission speculated without support that SPP's proposal may lead to unduly discriminatory outcomes and ignored SPP's explanation that "the and/or basis for satisfying the Benefits criterion is flexible in order to recognize benefits can be demonstrated in either or both of two ways, not to create a mechanism for undue discrimination."[76]

### b.     Commission Determination

41.     We find that the Commission adequately justified rejecting SPP's proposal due to the potential for unduly discriminatory outcomes.[77] As described above,[78] we find that the Commission reasonably explained that SPP's proposal in this proceeding raises the potential that the SPP Board could reach inconsistent cost allocation outcomes when responding to different requests by relying on different criteria to grant or deny a reallocation request, regardless of whether the circumstances of both requests were identical.[79] Contrary to Joint Parties' assertion that the Commission speculated without support to find that the SPP Board's proposed discretion to invoke a different benefit criterion when reviewing two requests with identical circumstances may yield unduly discriminatory outcomes,[80] we find that the proposed Tariff language provides discretion that would have permitted the SPP Board the opportunity to reach arbitrary and inconsistent outcomes without justification when presented with similar facts. Although Joint Parties suggest that SPP has stated the proposal is not intended to allow for unduly discriminatory results, they do not dispute that such results are, in fact, allowed under

---

[75] Request for Rehearing at 32-33

[76] *Id.* at 33 (citing Compliance Filing at 5-7).

[77] *See* Request for Rehearing at 32-34.

[78] *See supra* PP 29-30.

[79] *See* Rehearing Order, 184 FERC ¶ 61,028 at PP 50-54.

[80] *See* Request for Rehearing at 33-34.

[Footnote continued on next page]

SPP's proposal.[81]  This is not permitted under the FPA[82] and we need not address whether another, hypothetical proposal that might allow options for demonstrating benefits could be just and reasonable and not unduly discriminatory or preferential.[83]

>    **5.**     **Whether the Commission Should Set SPP's Proposal for Hearing and Settlement Judge Procedures or Initiate *Sua Sponte* an FPA Section 206 Proceeding**
>
>          **a.**     **Request for Rehearing**

42.     Joint Parties request that, if the Commission rejects their arguments on rehearing, the Commission either:  (1) grant rehearing to establish hearing and settlement judge procedures due to SPP's proposal raising issues of material fact; or (2) initiate an FPA section 206 proceeding to establish a just and reasonable cost allocation mechanism for Byway Facilities in "Generation-Rich Zones."[84]

---

[81] The Commission need not show any intent to discriminate where the proposed rate facially permits an unduly discriminatory result.  *See Env't Action v. FERC*, 996 F.2d 401, 410 (D.C. Cir. 1993) ("We have also overturned the Commission where a rate design on its face produced discriminatory cross-subsidizations of some customers by others.") (citing *Elec. Consumers Res. Council v. FERC*, 747 F.2d 1511, 1515-16 (D.C. Cir. 1984)); *see also Ala. Elec. Co-op., Inc.*, 684 F.2d 20, 29 (D.C. Cir. 1982) ("In the typical case, where the section 205(b) challenge is raised against a rate design calling for different rates to customer classes which are similarly situated, the utility has the burden of satisfying FERC that such differences exist between the classes as to justify the separate rates.  Only if the utility fails to carry this burden will the rate be found to be unduly discriminatory and unlawful.").

[82] *See State Corp. Comm'n v. FERC*, 876 F.3d 332, 335 (D.C. Cir. 2017) ("[D]ifference in rate design can be discriminatory only if the contested design 'has different effects on similarly situated customers,' and even then only if the differences cannot be justified.") (citing *Transmission Agency of N. Cal. v. FERC*, 628 F.3d 538, 549 (D.C. Cir. 2010); *Ark. Elec. Energy Consumers v. FERC*, 290 F.3d 362, 367 (D.C. Cir. 2002))).

[83] *See Cities of Bethany v. FERC*, 727 F.2d 1131, 1136 (D.C. Cir. 1984) (Commission has interpreted its authority to review proposed rates under FPA section 205 as "limited to an inquiry into whether the rates proposed by a utility are reasonable-and not to extend to determining whether a proposed rate schedule is more or less reasonable than alternative rate designs.").

[84] Request for Rehearing at 28.

[Footnote continued on next page]

**b.      Commission Determination**

43.     We deny Joint Parties' request to set SPP's proposed rate for hearing and settlement judge procedures or to initiate an FPA section 206 proceeding to investigate whether SPP's current Highway/Byway cost allocation method is just and reasonable. Both actions—setting a proceeding for settlement judge procedures and initiating an FPA section 206 proceeding—are within the Commission's discretion to initiate.[85]  Consistent with the discussion above, we are not persuaded by the information that Joint Parties submitted to exercise that discretion to initiate an FPA section 206 proceeding. Moreover, the Commission rejected SPP's proposal because it provides the SPP Board with too much discretion in allocating the cost of Byway Facilities if the SPP Board reaches opposing conclusions for otherwise nearly identical facilities, and we find there are no issues of material fact with respect to SPP's proposal that would warrant setting this matter for hearing and settlement judge procedures.

The Commission orders:

In response to Joint Parties' request for rehearing, the Rehearing Order is hereby modified and the result sustained, as discussed in the body of this order.

By the Commission.  Chairman Phillips and Commissioner Clements are concurring with a joint separate statement attached.

( S E A L )

Debbie-Anne A. Reese,
Deputy Secretary.

---

[85] *See Pub. Citizen, Inc. v. FERC*, 839 F.3d 1165, 1174 (D.C. Cir. 2016) (FPA section 205(e) does not require Commission "to either set the disputed rates for hearing or affirmatively disapprove any unjust or unreasonable rates through the Section 205 process."); *MidAmerican Energy Co.*, 138 FERC ¶ 61,028, at P 8 (2012) ("The Commission has discretion to initiate Federal Power Act section 206 . . . proceedings, either on its own motion or at the request of others." (footnote omitted) (citing *Gen. Motors Corp v. FERC*, 613 F.2d 939, 944 (D.C. Cir. 1979); *S. Union Gas Co.*, 840 F.2d 964, 968 (D.C. Cir. 1988); *Iroquois Gas Transmission Sys.*, 69 FERC ¶ 61,165, at 61,631 (1994); *JMC Power Projects v. Tenn. Gas Pipeline*, 69 FERC ¶ 61,162 (1994), *reh'g denied*, 70 FERC ¶ 61,168, at 61,528 (1995); *aff'd*, *Ocean States Power v. FERC*, 1996 U.S. App. LEXIS 11096, at *18 (1996)).

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Southwest Power Pool, Inc.                                    Docket No.  ER22-1846-004

(Issued December 19, 2023)

PHILLIPS, Chairman, CLEMENTS, Commissioner, *concurring*:


1.  We concur in today's rehearing order, which sustains the Commission's decision to reject Southwest Power Pool, Inc's (SPP) proposed revisions to its cost allocation methodology.

2.  We are sympathetic to the Joint Parties' concerns that the Commission's decisions in this docket have caused parties to spend considerable resources over several years, without a solution to the deeper cost allocation challenges that prompted SPP's filings in this proceeding.[1]  In the absence of a satisfactory resolution to those underlying challenges in this case, Joint Parties have understandably asked the Commission to initiate a broader 206 investigation or hearing process.  As discussed in the order, the Commission has declined to exercise its discretion for either procedural vehicle.[2]

3.  However, we write today to suggest a different pathway.  While the Joint Parties have raised compelling points that revisions to the Highway/Byway cost allocation approach may be appropriate under these circumstances,[3] in our view the best path forward to address this issue would be an open, collaborative process between the relevant parties

---

[1] Joint Parties' Request for Rehearing at 6 (arguing that the ruling would "leave customers in certain geographic areas in SPP to fund the cost of transmission facilities for which those customers do not receive commensurate benefits" at a time when SPP is experiencing an energy transition that includes increased levels of wind generation); Letter from Senators Roger Marshall and Jerry Moran, Docket No. ER22-1846 (Sept. 6, 2023) (explaining that the Commission's first rehearing order leaves in place a cost allocation methodology that, due to the rapid expansion of new wind generation resources, results in high costs for Kansans and the Sunflower Electric Power Corporation pricing zone); Letter from Congressman Ron Estes (Nov. 29, 2023) (addressing cost concerns on behalf of Kansan ratepayers).

[2] Order at P 43.

[3] *See, e.g.*, Joint Parties' Request for Rehearing at 21-31.

and stakeholders.  Such open dialogue would allow for fulsome exploration of any legal or administrative barriers to potential cost allocation approaches, without some of the rigidity of a contested proceeding.

4.  We recognize that this dialogue will also take time, but given the thorny, challenging nature of these issues, such dialogue would be highly beneficial.  The rehearing process afforded by the Federal Power Act is an opportunity for parties to seek a changed outcome, while preserving their arguments for appeal, and for the Commission to ensure that its decisions are legally sound.  But it is not the ideal venue for the collaborative discussions that we envision would lead to durable policy solutions.  Such dialogue may offer potential for a stakeholder-driven policy solution, or alternatively, provide essential insight and perspectives to guide the Commission's evaluation under section 206 of the Federal Power Act, including establishing a future record for a cost allocation methodology consistent with the beneficiary pays principle.  We encourage relevant parties and stakeholders to focus on such efforts.


        For these reasons, we respectfully concur.



_____          _____

Willie L. Phillips                                       Allison Clements
Chairman                                                 Commissioner